

FILED

JAN 15 2010

J. BARRY DUNFORD, CLERK
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT of LOUISIANA

THE BANKRUPTCY COURT HAS
REVIEWED These Findings of
Fact and Legal Conclusions
AND Hereby Adopts Same
as its Own Findings of
Fact and Legal Conclusions.

Stephen V. Callaway
Bankruptcy Judge
15 January 2010

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

IN RE:

**DENISE M. BANKSTON**

**CASE NO. 09-10675**

**DEBTOR**

**CHAPTER 11**

## FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION

On January 15, 2010, this Court held a hearing to consider confirmation of the Debtor's Third Amended and Restated Plan of Reorganization (the "Plan") filed on December 4, 2009. Appearing on behalf of the Debtor at the hearing was Curtis R. Shelton and Robert W. Raley. All other appearances are reflected in the record.

The Court considered: the Plan; the Debtor's Confirmation Hearing Memorandum filed on January 14, 2010 (the Debtor's "Memorandum"); the Declarations of Chad Garland submitted in support of the Debtor's Memorandum; the Debtor's Third Amended and Restated Disclosure Statement; the testimony of witnesses and the representations of counsel made at the hearing; and

1

the facts and circumstances of this case. Two objections to confirmation of the Plan were timely filed. These objections were filed by Altec Capital Services, LLC and Jalou Corporation d/b/a Cash Magic Truck Plaza and Casino. In accordance with the January 15, 2010 hearing, this Court being fully advised on the premises and good cause appearing therefor, this Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Denise M. Bankston (the "Debtor") is the debtor and debtor-in-possession in the above-captioned chapter 11 case, having filed a voluntary chapter 11 petition on March 5, 2009.

2. The Debtor's Third Amended Third Amended and Restated Disclosure Statement (the "Disclosure Statement"), referring to the Plan, was approved by the Court pursuant to an order entered on December 4, 2009. In accordance with said order, the Disclosure Statement, together with the Plan, notice of the confirmation hearing regarding the Plan, and the Ballots, were mailed by the Debtor on December 7, 2009, to all creditors and other parties in interest in this case, in full compliance with the Court's order and the requirements of Rule 3017(d) of the Federal Rules of Bankruptcy Procedure.

3. The Court fixed January 7, 2010, as the last day for filing and serving written objections to confirmation of the Plan pursuant to Rule 3020(b)(l) of the Federal Rules of Bankruptcy Procedure. Two objections to confirmation of the Plan were timely filed. These objections were filed by Altec Capital Services, LLC and Jalou Corporation d/b/a Cash Magic Truck Plaza and Casino. The Debtor contends that these objections are unfounded and/or the claimants have no standing to file objections to the Plan.

2

4. The Court also fixed January 7, 2010, as the last day for the return of ballots to Robert W. Raley, pursuant to Rules 3017(c) and 3018(a) of the Federal Rules of Bankruptcy Procedure. All ballots received were in favor of the Plan[1]. Specifically, of 13 valid votes timely received, 13 were in favor of the Plan. The classes under the Plan entitled to vote were Class 1 (Secured Claim), 3 (General Unsecured Claims not disputed), and 4 (General Unsecured Claims which the debtor is a guarantor or co-obligor). Of the members of Class 3 voting on the Plan,12 creditors asserting claims in the approximate amount of $7,737,6229.65, voted in favor of the Plan. No Class 3 member voted to reject the Plan. Of the members of Class 4 voting on the Plan, 1 creditor asserting a claim in the approximate amount of $2,251,255.04, voted in favor of the Plan. No Class 4 member voted to reject the Plan.

5. On the effective date, the Denise M. Bankston Distribution Trust shall receive the following assets: the sum of $21,080,341.00 which shall remain of the $30 million from the amounts paid to the Debtor from the Sisters Settlement after subtracting the amounts ($8,330,659.00) paid by the Debtor prior to the Effective Date as allowed by an the orders of the Bankruptcy Court entered on December 31, 2009 (See Order, Docket Number 932), and the amount ($589,000.00) to be paid by the Debtor to Jalou based upon the settlement made with that creditor; any and all amounts payable to the Debtor and all rights of the Debtor pursuant to the proof of claim filed by the Debtor in the Premier Aggregates, LLC bankruptcy case; all claims, rights or causes of action and Litigation Actions and Rights against Jack Singleton and Capital Aggregates, LLC, provided that such claims, rights, or causes of action and Litigation Actions and Rights shall first be applied as a setoff to

---

[1]One creditor, Altec Capital Services, voted to reject the plan. However, Altec Capital Services is a creditor in Class 5, and that class has no voting rights.

reduce any Allowed Claim of Jack Singleton and/or Capital Aggregates, LLC; all claims, rights or causes of action and Litigation Actions and Rights against Hess Management Firm, L.L.C. and/or Hess Construction Company, L.L.C., provided that such claims, rights, or causes of action and Litigation Actions and Rights shall first be applied as a setoff to reduce any Allowed Claim of Hess Management Firm, L.L.C. and/or Hess Construction Company, L.L.C.; all claims, rights or causes of action and Litigation Actions and Rights against R. Patrick Vance, Trustee for the Estate of Premier Aggregates, LLC, provided that such claims, rights, or causes of action and Litigation Actions and Rights shall first be applied as a setoff to reduce any Allowed Claim of R. Patrick Vance, Trustee for the Estate of Premier Aggregates, LLC; and all claims, rights or causes of action which the Debtor or the Estate may have against Julio E. Rios and Shuey Smith, LLC.

6. The balance of the proceeds from the sale of the Debtor's interest in the "Three Sisters Properties" $21,669,341.00 shall be transferred to the Denise M. Bankston Distribution Trust to pay allowed claims pursuant to the provisions of the Plan. The sum represents more than sufficient funds to pay, pursuant to the plan, the balance on all allowed claims and to provide a reserve for payment of any Class 5 claims in their estimated amount or in any greater amount that might be finally allowed in that might be in excess of the §502 estimation.

7. Each holder of an allowed claim will receive under the Plan on account of such claim property of a value, as of the effective date of the Plan, that is not less than the amount such holder would so receive or retain if the Debtor were liquidated under chapter 7 of title 11 on such date. Pursuant to the Acquisition, the assets of the Debtor have already been liquidated. The Plan is a feasible, efficient and economical means of distributing the proceeds of the Acquisition.

4

8. To the extent that any of the below conclusions of law may be considered findings of fact, the same are incorporated by reference as though fully set forth as findings of fact.

## CONCLUSIONS OF LAW

1. To the extent that any of the above findings of fact may be considered to constitute conclusions of law, the same are incorporated by reference as though fully set forth as conclusions of law.

2. Pursuant to 28 U.S.C. § 1334 of the Bankruptcy Amendments and Federal Judgeship Act of 1984, jurisdiction of the above-captioned chapter 11 case is vested in the United States District Court for the Western District of Louisiana, Shreveport Division. The United States District Court has referred, pursuant to 28 U.S.C. § 157(a), all cases under title 11 and any and all proceedings arising under title 11 or arising in or related to a case under title 11 to the bankruptcy judges of the district. This case having been so appropriately referred to the bankruptcy court grants the above-entitled court jurisdiction to make and enter an appropriate and final order of confirmation of the Plan pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(L).

3. Notice of the hearing on confirmation of the Plan was proper and appropriate as was notice of the deadlines for filing objections to the Plan and for the submission of Ballots with respect to the Plan.

4. The Plan divides the claims of creditors and interest holders into five (5) classes. Only classes of creditors and interest holders with claims or interests impaired under a plan of reorganization are entitled to vote on a plan. The Class of creditors not impaired under the Plan is Class 5. Class 1, 2, 3 and 4 are impaired under the Plan and the members of Classes 1, 3, and 4 are impaired classes entitled to vote to accept or reject the Plan. Members of Class 2 were not entitled to vote because the claim is held by an insider. In accordance with an order of the Court entered on December 4, 2009,

5

in order to be counted, Ballots with respect to the Plan completed by members of Classes 1, 3, and 4 had to be received by Robert W. Raley no later than January 7, 2010.

5. Under section 1126(c) of the Bankruptcy Code (11 U.S.C. § 1126 (c)) an impaired class of claims is deemed to have accepted the Plan if class members holding at least two-thirds (2/3) in amount and more than one-half (1/2) in number of all allowed claims of class members actually voting have voted in favor of the Plan. Under section 1126(d) of the Bankruptcy Code (11 U.S.C. § 1126 (d)), an impaired class of interests is deemed to have accepted the Plan if class members holding at least two-thirds (2/3) in amount of the allowed interests of class members actually voting have voted in favor of the Plan.

6. In this case, the requirements of section 1126 of the Bankruptcy Code have been satisfied. All creditors entitled to vote, timely voting on the Plan have voted in favor of the Plan[2]. Creditors holding an asserted sum of $9,988,884.69 in claims against the estate have voted in favor of the Plan.

7. Bankruptcy Code section 1129 contains the standards for confirmation of a plan under chapter 11. 11 U.S.C. § 1129; *see In re Sound Radio, Inc.*, 93 B.R. 849, 852 (Bankr. D.N.J. 1988); *In re Texaco Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988).

8. When a plan of reorganization satisfies each of the requirements contained in section 1129(a), the court shall confirm the plan without considering section 1129(b). See 11 U.S.C. §§ 1129(a) and (b); *In re Texaco Inc.*, 84 B.R. at 910. Specifically, section 1129(b) only applies if a class whose claims or interests are impaired does not accept the plan as required by section 1129(a)(8). 7 Collier on Bankruptcy, ¶ 1129.03[8], p. 1129-54 (Matthew Bender 15th Ed. Revised). Moreover, a plan of

---

[2]One creditor, Altec Capital Services, voted to reject the plan. However, Altec Capital Services is a creditor in Class 5, and Class 5 does not have voting rights.

reorganization need only satisfy the requirements of section 1129(b) with respect to classes that voted against the plan. *In re Johns-Manville Corp.*, 843 F.2d at 650. In this case, Class 3 and Class 4 voted in favor of the Plan. Class 1 was entitled to vote, but did not vote. Therefore, the plan was not affirmatively accepted by Class 1.

9. Bankruptcy Code section 1129(a)(l) permits the court to confirm a plan only if the plan complies with the applicable provisions of title 11, United States Code (the Bankruptcy Code ). 11 U.S.C. § 1129(a)(1); *see Kane v. Johns-Manville Corp.*, 843 F.2d at 648-49; *In re Texaco Inc.*, 84 B.R. 903, 905; *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984). Bankruptcy Code sections 1122 and 1123. See *Kane v. Johns-Manville Corp.*, 843 F.2d at 648-49; *In re Texaco Inc.*, 84 B.R. 903, 905; *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984); 5 Collier on Bankruptcy, ¶ 1129.02, p. 1129-19 (15th Ed. 1993). Section 1122 governs classification of claims and interests and section 1123 sets forth the provisions that are required to be included, and those that may be included, in a plan of reorganization. 11 U.S.C. §§ 1122 and 1123.

10. Bankruptcy Code section 1123(a)(1) requires that a plan designate, subject to Bankruptcy Code section 1122, classes of claims, other than claims of kind specified in sections 507(a)(2) (administrative expenses), 507(a)(3) (involuntary case gap claims), or 507(a)(8) (certain unsecured tax claims) and classes of interests. 11 U.S.C. § 1123(a)(1). In designating Classes 1 through 5 in Article III of the Plan, the Debtor has satisfied the requirement of 11 U.S.C. § 1123(a)(1).

11. It is not clear from the language of the statute nor from its legislative history whether Bankruptcy Code section 1123(a)(1) prohibits the classification of Bankruptcy Code section 507(a)(2), (a)(3) and (a)(8) claims or merely makes such classification permissive. The court in *In re Sullivan*, 26 B.R.

7

677, 678 (Bankr. W.D.N.Y. 1982), held that classification of such claims was prohibited. The reason that it is unnecessary to classify such claims is that a majority of a class composed of creditors holding such priority claims cannot bind the minority to a treatment at variance with Bankruptcy Code section 1129(a)(9). See discussion of section 1129(a)(9), *infra*. In the Plan, the Debtor has appropriately not sought to classify section 507(a)(2) and (8) priority claims. Article II of the Plan sets forth the treatment of "Administrative Expenses and Unclassified Claims". The designation of such claims under the Plan is in accordance with section 1123(a)(1).

12. Bankruptcy Code section 1122(a) does not require that similar claims necessarily be placed in the same class. 11 U.S.C. § 1122(a); see *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1313 (8th Cir. 1987); *Matter of Jersey City Medical Center*, 817 F.2d 1055, 1061 (3rd Cir. 1987); *Teamsters Nat'l Freight Industry Negotiating Committee v. U.S. Truck Co. (In re U.S. Truck Co.)*, 800 F.2d 581, 584-87 (6th Cir. 1986); *In re Meadow Glen, Ltd.*, 87 B.R. 421, 424-26 (Bankr. W.D. Tex. 1988); *In re Texaco Inc.*, 84 B.R. 893, 905; *In re Ag Consultants Grain Div., Inc.*, 77 B.R. 665, 671-675 (Bankr. N.D. Ind. 1987). Congress intended to afford bankruptcy judges' broad discretion to decide the propriety of plans in light of the facts of each case. See *In re U.S. Truck Co., Inc.*, 800 F.2d 581, 584-86 (6th Cir. 1986) (discussing the legislative history of section 1122). Moreover, Congress intended that the proponent of a plan have flexibility in classifying claims. See 7 Collier on Bankruptcy, ¶ 1122.04, p. 1122-27-30 (Matthew Bender 15th Ed. Revised).

13. Article III of the Plan, designating classes of claims and interests under the Plan, places only claims or interests in each particular class that are substantially similar to the other claims or interests in the class. The Plan therefore complies with section 1122(a). See *In re Texaco Inc.*, 84 B.R. 893, 905.

8

14. Bankruptcy Code section 1123 describes mandatory and permissive plan provisions. 11 U.S.C. § 1123. Section 1123(a) sets forth required provisions of a plan. 11 U.S.C. § 1123(a). Section 1123(b) suggests certain discretionary plan provisions. 11 U.S.C. § 1123(b).

15. Bankruptcy Code section 1123(a)(1) states that a plan must designate, subject to Bankruptcy Code section 1122, classes of claims, other than claims for administrative expenses (section 507(a)(2)), gap claims in involuntary cases (section 507(a)(3)), and certain unsecured tax claims (section 507 (a)(8)), and classes of interests. The Plan, in Article III, designates classes of claims and interests in accordance with section 1122. Thus, the Plan complies with section 1123(a)(1). See *In re Texaco Inc.*, 84 B.R. 893, 905.

16. Bankruptcy Code section 1123(a)(2) requires that a plan specify any class of claims or interests that is not impaired under the plan. 11 U.S.C. § 1123 (a)(2). In Article IV of the Plan, the Debtor meets this requirement by specifying the Classes that are not impaired under the Plan. *See In re Texaco Inc.*, 84 B.R. 893, 905. Class 5 is not impaired under the Plan. The treatment of the holders of allowed claims in this unimpaired classes is set forth in Article IV of the Plan.

17. Section 1124 sets forth three ways by which a claim can be left unimpaired under a plan. 11 U.S.C. § 1124. In section 1124, Congress defined impairment in broad terms and then carved out three narrow exceptions to that expansive definition. *In re Madison Hotel Associates*, 749 F.2d 410, 418 (7th Cir. 1984), citing *In re Taddeo*, 685 F.2d 24, 28 (2nd Cir. 1982); *In re American Solar King Corp.*, 90 B.R. 808, 819 (Bankr. W.D. Tex. 1988). The three exceptions are important because, under subsection 1126(f), a class that is not impaired under a plan is deemed to have accepted the plan. 11 U.S.C. § 1126(f). Class 5 is not impaired. One of the three exceptions to impairment is applied in the Plan.

9

18. Under one of these exceptions to impairment, as provided in Bankruptcy Code section 1124(1), if, on the effective date, the holder of a claim receives cash equal to the allowed amount of such claim, the creditor is unimpaired. 11 U.S.C. § 1124(1). Under the Plan, Allowed Claims in Class 5 will be paid in full in cash with interest on or before the Effective Date. Thus, claims in Class 5 are unimpaired by the Plan.

19. Bankruptcy Code section 1123(a)(3) requires that a plan specify the treatment of any class of claims or interests that is impaired under the Plan. 11 U.S.C. § 1123(a)(3). As discussed above, with the exception of claims falling within Bankruptcy Code sections 507(a)(2), (a)(3) and (a)(8), every claim in a chapter 11 case must be placed in a class and every class must be designated as impaired or unimpaired. See 11 U.S.C. §§ 1123(a)(1) and (a)(2). The Plan satisfies these requirements. Class 1, Class 2, Class 3, and Class 4 are impaired under the Plan. If a class is impaired, section 1123(a)(3) requires that the Plan specify how the class is to be treated. Article IV of the Plan specifies the treatment of classes of claims and interests that are impaired under the Plan. The discussion of the treatment of classes under the Plan contained in Article IV satisfies the requirement of 11 U.S.C. § 1123(a)(3). See *In re Texaco Inc.*, 84 B.R. at 905.

20. Bankruptcy Code section 1123(a)(4) requires that a plan provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment. 11 U.S.C. § 1123 (a)(4). Thus, once a plan has classified creditors, it must provide the same treatment for each claim or interest of a particular class, unless the holder agrees to less favorable treatment. See *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1362-63 (9th Cir. 1986). However, section 1123(a)(4) only requires equality of treatment of claims

10

or interests placed in the same class. *In re Acequia, Inc.*, 787 F.2d at 763; *In re Jersey City Medical Center*, 817 F.2d 1055, 1061. The Plan provides for the same treatment for each claim or interest of a particular class. Thus, the Plan complies with 11 U.S.C. § 1123(a)(4). See *In re Texaco Inc.*, 84 B.R. 893, 905.

21. Bankruptcy Code section 1123(a)(5) requires that a plan provide adequate means for the plan's implementation and provides a number of examples of methods for doing so. 11. U.S.C. § 1123 (a)(5); see *In re Texaco Inc.*, 84 B.R. 893, 905. The alternatives set forth in section 1123(a)(5) may be proposed by a plan proponent notwithstanding non-bankruptcy law or agreements. 7 Collier on Bankruptcy, ¶ 1123.01 [5], p. 1123-10 (Matthew Bender 15th Ed. Revised). The examples of adequate means for implementation of a plan provided in section 1123(a)(5) are illustrative and the section does not exclude or limit any other means. *Id.*

22. Article V of the Plan provides adequate means for the Plan's implementation, including the transfer of proceeds from a court approved sale of assets of the estate to the Denise M. Bankston Distribution Trust and provisions for distribution contained in the Plan and Trust Agreement as suggested by 11 U.S.C. § 1123 (a)(5)(B).

23. Bankruptcy Code section 1123(a)(6) requires that a plan provide for the inclusion in the charter of the debtor, if the debtor is a corporation, of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of

11

default and the payment of such dividends. 11 U.S.C.§ 1123(a)(6). The debtor is an individual, therefore the provisions of 11 U.S.C.§ 1123(a)(6) do not apply.

24. Bankruptcy Code section 1123(a)(7) states that a plan shall contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect, to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director or trustee. 11 U.S.C. § 1123(a)(7). Bankruptcy Code sections 1123(a)(6) and 1123(a)(7) has limited application in this case where there is no corporate debtor. The Plan does not implicate any issues with regard to the selection of any officer or director. The Plan does, however, provide for the establishment of the Denise M. Bankston Distribution Trust and appointment of the Denise M. Bankston Trustee. Those provisions in the Plan regarding the establishment of the Denise M. Bankston Distribution Trust and the appointment of the Denise M. Bankston Trustee meet the requirements of 1123(a)(6) and 1123(a)(7).

25. Bankruptcy Code section 1123(a)(7) is not applicable in this case insofar as this case does not involve a corporate debtor and the Plan does not implicate any issues with regard to the selection of any officer, director, or trustee. Although the term "trustee" is used in this section in a different context, the provisions in the Plan regarding the establishment of the Denise M. Bankston Distribution Trust and the appointment of the Denise M. Bankston Trustee meet the requirements of 1123(a)(6) and 1123(a)(7). There are no other provisions in the Plan regarding such selection and thus there are no provisions inconsistent in that regard in the interests of creditors and equity security holders with public policy. The Plan complies with section 1123(a)(7). See *In re Texaco Inc.*, 84 B.R. 893, 906.

12

26. Section 1123(b) suggests certain permissive plan provisions. 11 U.S.C. § 1123(b); see *In re Texaco Inc.*, 84 B.R. at 906. Several of these discretionary provisions are contained in the Plan. For example, the Plan, includes a number of provisions set forth in 11 U.S.C. § 1123(b), such as impairment of claims, provisions for the settlement and/or adjustment of claims, distribution from the proceeds of an approved sale of property of the estate, and creation of the Denise M. Bankston Distribution Trust.

27. Section 1123 (b)(5) also permits a plan to contain any other appropriate provision not inconsistent with the applicable provisions of this title. 11 U.S.C. § 1123 (b)(5); see *In re Texaco Inc.*, 84 B.R. 893, 906. The Plan does not contain any provision that is inconsistent with the applicable provisions of the Bankruptcy Code.

28. Section 1123(b)(5) also permits a plan to contain "any other appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. § 1123(b)(5); see *In re Texaco Inc.*, 84 B.R. at 906. The Plan does not contain any provision that is inconsistent with the applicable provisions of the Bankruptcy Code.

29. Bankruptcy Code section 1129(a)(2) states that the court shall confirm a plan only if the proponent of the plan complies with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(2). The principal purpose of section 1129(a)(2) is to require, as a condition of confirmation, that the court ascertain whether the proponent of the plan under consideration has complied with the requirements of section 1125 in the solicitation of acceptances of the plan. See *In re Texaco Inc.*, 84 B.R. 893, 906-907, citing *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984). Under section 1125, a postpetition solicitation of votes on a plan is improper unless the court has approved a written disclosure statement filed with the plan. See *In re*

13

*Media Scent., Inc.*, 89 B.R. 685, 688 (Bankr. E.D. Tenn. 1988). The primary purpose of a disclosure statement is to give creditors and interest holders the information they need to decide whether to accept the plan. *In re Alonnier Brothers*, 755 F.2d 1336, 1342 (8th Cir. 1985). A disclosure statement need not comply with the disclosure standards of the federal securities laws. *Kirk v. Texaco, Inc.*, 82 B.R. 678, 681 (S.D.N.Y. 1988). Bankruptcy judges have broad discretion in reviewing disclosure statements and what constitutes adequate information and any particular instance will develop on a case-by-case basis. See *Kirk*, 82 B.R. 678, 682; *In re Monnier Brothers*, 755 F.2d 1336, 1342.

30. The court approved the Disclosure Statement, finding that it contained adequate information. Thereafter, the Debtor timely mailed the Disclosure Statement and the Plan in accordance with the court's order approving the Disclosure Statement. The Debtor has complied with all other applicable provisions of title 11 and, therefore, has satisfied the requirement of section 1129(a)(2).

31. Bankruptcy Code section 1129(a)(3) requires that a plan be proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3); See *Kane v. Johns-Manville Corp.*, 843 F.2d at 649; *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1315; *In re Sound Radio, Inc.*, 93 B.R. 849, 853 (Bankr. D.N.J. 1988); *In re Texaco Inc.*, 84 B.R. 893, 907; and *In re Future Energy Corp.*, 83 B.R. 470, 486 (Bankr. S.D. Ohio 1988). This requirement is to be read restrictively. *In re Victory Construction Co.*, 42 B.R. 145, 149 (Bankr. C.D. Cal. 1984). The term good faith is not specifically defined in the Code. See *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1315; *In re Madison Hotel Associates*, 749 F.2d at 424; *In re Texaco Inc.*, 84 B.R. at 907; and *In re Future Energy Corp.*, 83 B.R. at 486. However, in the context of section 1129(a)(3), some courts have interpreted "good faith" to mean that there exists a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code. *In re Nite Lite*

14

*Inns*, 17 B.R. 367, 370 (S.D. Cal. 1982); see *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d at 315; *In re Madison Hotel Associates*, 749 F.2d at 425; *In re Costal Cable TV., Inc.*, 709 F.2d 762, 764 (1st Cir. 1983); *In re Sound Radio, Inc.*, 84 B.R. at 853; *In re Texaco Inc.*, 84 B.R. at 907; *In re Future Energy Corp.*, 83 B.R. 470, 486 (Bankr. S.D. Ohio 1988). Other courts have held that the good-faith test of section 1129 (a)(3) requires that "the plan was proposed with honesty and good intentions and with a basis for expecting a reorganization can be effected." *Koebel v. Glessing*, 751 F.2d 137, 139 (2nd Cir. 1984), quoting *Manati Sugar Co. v. Mock*, 75 F.2d 284, 285 (2nd Cir. 1935); see *Kane v. Johns-Manville Corp.*, 843 F.2d at 649. The court's determination of the "good faith" proposal of a plan under section 1129(a)(3) must be made in light of "the totality of the circumstances surrounding confection" of the plan. *In re Jasik*, 727 F.2d 1379, 1383 (5th Cir. 1984), citing *Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir. 1983); see *In re Madison Hotel Associates*, 749 F.2d at 425; *In re Sound Radio, Inc.*, 93 B.R. 849, 853; *In re Texaco Inc.*, 84 B.R. 893, 907; and *In re Future Energy Corp.*, 83 B.R. 470, 486. Because no timely objection to the Plan raising section 1129 (a)(3) has been filed, the Court may determine that the Plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues. See Rule 3020(b)(2) of the Federal Rules of Bankruptcy Procedure.

32. The proposal of the Plan is consistent with the objectives and purposes of the Bankruptcy Code and was made with honesty and good intentions and with a basis for expecting that, under the circumstances, it was the best means for maximizing any recovery by creditors of the Debtor. Therefore, the Plan has been proposed in good faith, not by any means forbidden by law, and complies with section 1129(a)(3).

15

33. Bankruptcy Code section 1129(a)(4) requires that any payment made or to be made by the proponent, the debtor, or by a person issuing securities, or acquiring property under the plan, for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the court, as reasonable. 11 U.S.C. § 1129 (a)(4); see *In re Texaco Inc.*, 84 B.R. 893, 907-908; *In re Future Energy Corp.*, 83 B.R. 470, 487-488; 7 Collier on Bankruptcy, ¶ 1129.03[4], p. 1129-38-39 (Matthew Bender 15th Ed. Revised). The Plan establishes procedures for application, approval, and payment of these claims. Said procedure for review and ultimate determination by the court of the professional fees and expenses to be paid by the Debtor satisfies the requirement of section 1129 (a)(4). See *In re Sound Radio, Inc.*, 93 B.R. at 854; *In re Texaco Inc.*, 84 B.R. at 908; *In re Future Energy Corp.*, 83 B.R. at 488." Court approval of payments for services and expenses is governed by various Code provisions– e.g., §§ 328, 329, 330, 331 and 503 (b)– and need not be explicitly provided for in a Chapter 11 plan." *In re Future Energy Corp.*, 83 B.R. at 488. Thus, the Plan complies with section 1129 (a)(4).

34. Bankruptcy Code section 1129(a)(5)(A) requires the proponents of a plan to disclose the identity and affiliations of any individual proposed to serve after confirmation as a director, officer or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor of the debtor under the plan, and requires. the appointment or continuance of such individual to be consistent with the interest of creditors and equity security holders and with public policy. 11 U.S.C.§ 1129(a)(5); see *In re Texaco Inc.*, 84 B.R. 893, 908. This section augments section 1123(a)(7). Section 1129(a)(5)(A) is not applicable. In this case there are not any individuals proposed to serve after confirmation as a director, officer or voting trustee of the Debtor, and there

are no affiliates of the Debtor participating in the Plan. Therefore, the requirements of section 1129(a)(5)(A), to the extent applicable, have been satisfied. See *In re Texaco Inc.*, 84 B.R. 893, 908. The Denise M. Bankston Distribution Trust will be formed on the effective date.

35. Section 1129(a)(5)(B) requires the proponent of the plan to disclose the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider. See *In re Texaco Inc.*, 84 B.R. at 910. The term insider is defined in section 101(31). See 11 U.S.C. § 101(31). The only party that is to be employed or retained by the Debtor will actually be the Denise M. Bankston Distribution Trustee, Chad Garland, who is <u>NOT</u> an insider. Therefore, section 1129(a)(5)(B) is either not applicable, or is satisfied.

36. Section 1129(a)(6) requires as a condition precedent to confirmation that any governmental regulatory entity with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval. 11 U.S.C. § 1129(a)(6). The Plan does not provide any rate change. Thus, section 1129(a)(6) does not apply. See *In re Sound Radio, Inc.*, 93 B.R. 849, 854; *In re Texaco Inc.*, 84 B.R. 893, 908.

37. Bankruptcy Code section 1129(a)(7) sets forth the "best interest of creditors" test. 11 U.S.C. § 1129(a)(7); see *Kane v. Johns-Manville Corp.*, 843 F.2d 640, 649; *In re Texaco Inc.*, 84 B.K. 893, 908-909; *In re Victory Construction Co., Inc.*, 42 B.R. 145, 151; *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 150. Subsection 1129(a)(7) provides that with respect to each impaired class of claims or interests, each holder of a claim or interest of such class has accepted the Plan or will receive or retain under the Plan property of a value, as of the Effective Date, not less than the amount that such

17

holder would receive or retain if the Debtor were liquidated under chapter 7 on such date. 11 U.S.C. § 1129(a)(7).

38. In this case, each holder of a claim or interest entitled to vote that actually vote accepted the plan. Moreover, proceeds of the approved sale of the Three Sisters Property for $30 million is now property of the estate available for transfer to the Denise M. Bankston Distribution Trust. Section 502(c) provides the process for the estimation of unliquidated claims. As a result of that process, the $30 million is sufficient for any potential payment of an "estimated claim" for plan confirmation purposes. There will be payment of all allowed claims. The Plan provides for the most efficient and economical means of distribution of the proceeds. Conversion of this chapter 11 case to a chapter 7 liquidation case would result in additional delay and expense and would reopen the bar date for filing claims. This would diminish the assets available for distribution to creditors. Accordingly, under the Plan, any recovery by creditors would not be exceeded by that which would occur in a chapter 7 liquidation. Therefore, the Plan satisfies the "best interest of creditors" test of 11 U.S.C. § 1129(a)(7).

39. Section 1129(a)(8) requires that each class of claims or interests either accepts the plan or is not impaired under the plan. 11 U.S.C. § 1129(a)(8); see *In re Texaco Inc.*, 84 B.R. 893, 909.

40. Whether a class has accepted the plan is determined by reference to section 1126. 11 U.S.C. § 1126. Under section 1126(f) any class which is not impaired under the plan is conclusively presumed to have accepted the plan. 11 U.S.C. § 1126(f); See *In re Victory Const. Co., Inc.*, 42 B.R. 145, 152 (Bankr. C.D. Cal. 1984).

18

41. Because the Plan does not impair Class 5, that class is deemed to have accepted the Plan. See 11 U.S.C. § 1126(f). Classes 1, 2, 3, and 4 are impaired under the Plan[3]. Accordingly, the holders of allowed claims in Classes 1, 3, and 4 were entitled to vote on the Plan. As set forth above, the members of Class 1 failed to vote. Class 3 and Class 4 voted unanimously to accept the Plan. Therefore, it is necessary that the court consider the requirements of section 1129(b) with respect to the Plan.

42. Bankruptcy Code section 1129(a)(9) states the rules applicable to payment of those unsecured claims entitled to priority in distribution in chapter 11 cases. 11 U.S.C.§ 1129(a)(9). With respect to priority claims of the kind specified in Bankruptcy Code section 507(a)(2), (3), or (8), 11 U.S.C. § 1129(a)(9) constitutes the only essential confirmation requirement, since there is no reason to create a class or classes for section 507(a)(3) and (8) claims in light of the fact that a majority of such classes cannot bind a minority to less favorable payment terns than those provided under section 1129 (a)(9). See 7 Collier on Bankruptcy, ¶1129.03[9], p. 1129-55-60 (Matthew Bender 15th Ed. Revised). Unless the holder of such a priority claim agrees to less favorable treatment of its claim, section 1129(a)(9) requires the payment of second (section 507(a)(2)) and third (section 507(a)(3)) priority claims in full in cash on the effective date of the plan. 11 U.S.C. § 1129(a)(9)(A). Article II of the Plan provides for appropriate treatment of section 507(a)(2) claims in compliance with section 1129(a)(9)(A). There are no section 507(a)(3) claims.

43. Section 1129(a)(9)(B) requires that holders of section 507(a)(1), (4), (5), (6) or (7) priority claims receive: (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the

---

[3] Class 2 is not allowed to vote because the claim is held by an insider.

plan, cash on the effective date of the plan equal to the allowed amount of such claim. 11 U.S.C. § 1129(a)(B). The Debtor does not believe that any allowed priority claims pursuant to section 507(a)(1), (4), (5), (6) or (7) exists in this case.

44. Section 1129(a)(9)(C) requires that holders of section 507(a)(8) priority claims receive on account of such claims deferred cash payments, over a period not exceeding six years after the date of assessment of such claims, of a value, as of the effective date of the plan, equal to the allowed amount of such claims. 11 U.S.C. § 1129 (a)(9)(C). The Plan provides that the holders of allowed claims, pursuant to 507(a)(8). Therefore, the plan complies with § 1129 (a)(9)(C).

45. Bankruptcy Code section 1129(a)(10) requires as a condition of confirmation that if a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider. 11 U.S.C. § 1129(a)(10); *see In re Texaco Inc.*, 84 B.R. 893, 910. As discussed above, section 1126 provides the requirements for determining acceptance. Section 1129(a)(10) requires affirmative acceptance of a plan by at least one impaired class of claims, unless all classes of claims are left unimpaired. 5 Collier on Bankruptcy, ¶1129.02[10], (Matthew Bender 15th Ed. Revised), citing *In re Russell*, 12 B.R. Ct. Dec. (CCR) 571. As discussed above, Class 3 and Class 4 are impaired classes of "claims" under the Plan and the only votes cast were by members of Class 3 and Class 4. Those classes have voted in favor of the Plan. See the detail of the voting results set forth above. Therefore, the requirements of 11 U.S.C.§ 1129(a)(10) are satisfied.

46. Bankruptcy Code section 1129(a)(11) requires as a condition of confirmation that the court find that confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such

liquidation or reorganization is proposed in the plan. 11 U.S.C. §1129(a)(11); see *Kane v. Johns-Manville Corp.*, 843 F.2d at 649; *In re Sound Radio, Inc.*, 93 B.R. at 855-56; *In re Texaco Inc.*, 84 B.R. at 910. The feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed. *Kane v. Johns-Manville Corp.*, 843 F.2d at 649; *Prudential Insurance Co. v. Monnier* (*In re Monnier Brothers*), 755 F.2d 1336, 1341 (8th Cir. 1985); *In re American Solar King Corp.*, 90 B.R. at 892-893; *In re Prudential Energy Company*, 58 B.R. 857, 862 (Bankr. S.D.N.Y. 1986).

> Guaranteed success in the stiff winds of commerce without the protection of the Code is not the standard under section 1129(a)(1). Most debtors emerge from reorganization with a significant handicap. But a plan based on impractical or visionary expectations cannot be confirmed.

*In re Prudential Energy Company*, supra, at 862, citing *In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985); see *In re American Solar King Corp.*, 90 B.R. at 833.

47. The Debtor's interest in the Three Sisters Properties was sold pursuant to Court approval. The allocation and distribution of the proceeds are provided for under the Plan through the Denise M. Bankston Trust. The Plan is the most efficient, economical and feasible means of allocating and distributing the proceeds. The proceeds of the sale, $30 million, render the plan feasible. The Plan has a reasonable likelihood of viability, is much more than a mere "visionary scheme" and, therefore, satisfies the feasibility requirement of section 1129(a)(11). See *In re Acequia, Inc.*, 787 F.2d at 1365, citing *In re Pizza of Hawaii*, 761 F.2d at 1382 (9th Cir. 1985). 48. Bankruptcy Code section 1129(a)(12) mandates the payment of all fees required under 28 U.S.C. § 1930, including filing fees and United States Trustee Quarterly Fees. The Debtor believes that all such fees have been paid on a current basis and that no obligations in this regard will exist on the Effective Date of the Plan. In

21

the event that any such fees are owing on the Effective Date they would be nominal in the context of the Plan and they will be paid. Thus, the requirement of section 1129 (a)(12) is satisfied.

49. The Debtor is not obligated for any retiree benefits as that term is defined in section 1114, and therefore section 1129(a)(13) does not apply.

50. Section 1129(b)(1) of the Bankruptcy Code explains that confirmation of a "cram down" plan requires the plan proponent to demonstrate that the plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired under the plan that has not accepted the plan.

51. The criteria of unfair discrimination preserves the fair treatment of a dissenting class from that class' own perspective. Just as § 1122 requires that similar creditors be grouped within the same class, § 1129(b) protects the creditors within a certain class from discrimination in relation to other classes of creditors. For example, an unsecured deficiency claim may be classified separately from trade vendors, but that separate classification does not authorize different treatment. *See* H. Rep. No. 595, 95th Cong., 1st Sess. pp 413 to 418 (1977).

52. Courts have pointed out, however, that the Code stops short of prohibiting any discrimination and instead allows discrimination as long as it is fair. *In re Aztec Co.*, 107 B.R. 585, 19 Bankr. Ct. Dec. (CRR) 1826, Bankr. L. Rep. (CCH) P 73135 (Bankr. M.D. Tenn. 1989); *In re Creekside Landing, Ltd.*, 140 B.R. 713, 26 Collier Bankr. Cas. 2d (MB) 1589, Bankr. L. Rep. (CCH) P 74612 (Bankr. M.D. Tenn. 1992); *In re American HomePatient, Inc.*, 298 B.R. 152 (Bankr. M.D. Tenn. 2003), subsequently aff'd, 420 F.3d 559, 45 Bankr. Ct. Dec. (CRR) 47, Bankr. L. Rep. (CCH) P 80341, 2005 FED App. 0345P (6th Cir. 2005), cert. denied, 127 S. Ct. 55, 166 L. Ed. 2d 251 (U.S. 2006).

22

53. In making a determination whether the discrimination is unfair, courts have applied four factors as follows: (1) whether the discrimination is supported by reasonable basis; (2) whether the debtor can confirm and consummate a plan without discrimination; (3) whether the discrimination is proposed in good faith; and (4) the treatment of the classes discriminated against. See *In re Aztec Co.*, 107 B.R. 585, 19 Bankr. Ct. Dec. (CRR) 1826, Bankr. L. Rep. (CCH) P 73135 (Bankr. M.D. Tenn. 1989; *In re American HomePatient, Inc.*, 298 B.R. 152 (Bankr. M.D. Tenn. 2003), subsequently aff'd, 420 F.3d 559, 45 Bankr. Ct. Dec. (CRR) 47, Bankr. L. Rep. (CCH) P 80341, 2005 FED App. 0345P (6th Cir. 2005), cert. denied, 127 S. Ct. 55, 166 L. Ed. 2d 251 (U.S. 2006)

54. Section 1129(b) specifies when a plan must be found fair and equitable, and what it takes to support that finding. The fair and equitable rule has an ancient lineage, running back through old Chapter X to its predecessor, Act § 77 B, and thence back to the nonstatutory equity receivership. As developed in judicial gloss, fair and equitable meant absolute priority, i.e., the idea that no junior class could take anything until all senior classes were paid in full. Under the Code, it retains that meaning, with one vital exception. Under the Code, absolute priority applies only as to dissenting classes.

55. Section 1129(b) provides an explicit although not exhaustive articulation of what constitutes fair and equitable treatment for a class of claims. The Fifth Circuit has held this requires a court to "consider the entire plan in the context of the rights of the creditors under state law and the particular facts and circumstances". *Matter of D & F Const. Inc.*, 865 F.2d 673, 675, 18 Bankr. Ct. Dec. (CRR) 1529, 20 Collier Bankr. Cas. 2d (MB) 716, Bankr. L. Rep. (CCH) ¶72719 (5th Cir. 1989)

56. Although many of the factors interpreting 'fair and equitable' are specified in paragraph (2), others, which were explicated in the description of section 1129(b) in the House report, were omitted

23

from the House amendment to avoid statutory complexity and because they would undoubtedly be found by a court to be fundamental to 'fair and equitable' treatment of a dissenting class. 24 Cong. Rec. 32,407 (1978). Section 1129(b)(2) sets minimal standards plans must meet. However, it is not to be interpreted as requiring that every plan not prohibited be approved. A court must consider the entire plan in the context of the rights of the creditors under state law and the particular facts and circumstances when determining whether a plan is "fair and equitable." See *In re Spanish Lake Associates*, 92 B.R. 875, 878 (Bankr. E.D.Mo.1988); *In re Edgewater Motel, Inc.*, 85 B.R. 989, 998 (Bankr. E.D. Tenn.1988).

57. The plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims that is impaired under the plan. Therefore, the Plan satisfies the 'fair and equitable' test of 11 U.S.C. § 1129(b)(2) .

58. The Debtor has demonstrated that the Plan satisfies each of the requirements contained in section 1129(a), except section 1129(a)(8). The plan is "fair and equitable", does not discriminate unfairly, and meets all other requirements of section 1129(b). Therefore, the Debtor is entitled to an order of the court confirming the Plan.

### 

This Proposed findings of fact and Conclusions of law was prepared and is being submitted by:
Robert W. Raley, La. Bar No. 11082
290 Benton Road Spur
Bossier City, LA 71111
Telephone: 318-747-2230
Fax: 318-747-0106

**Attorney for Debtor and Debtor-in-Possession**

COPY SENT
Date: *1-15-10*
By: *mz*
To: *BNC*
*MATRIX*

24